# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 09-755-1 |
| | : | |
| MARKEITH JOHN WEBB, | : | |
| | : | |
| Defendant. | : | |

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**November 24, 2010**

## I.　INTRODUCTION

Before the Court is Defendant's Restated Motion Requesting A <u>Franks</u> Hearing (Doc. No. 67) and the Government's Response in Opposition to Defendant's Restated Motion Requesting A <u>Franks</u> Hearing (Doc. No. 58). The Court heard oral argument on the Motion at a hearing held on November 18, 2010. Upon consideration of the arguments presented by both parties in their respective briefs and at the hearing, and also the exhibits entered into evidence by both parties at the hearing,[1] the Court will deny Defendant's Restated Motion Requesting A <u>Franks</u> Hearing.

---

[1] At the hearing, the parties offered into the record the following exhibits: G-1: Supplemental Report of Patrolman Marraccini and Detective Alonzo; G-2: Photo Array with Identification of Defendant by Shaprese Thomas dated June 8, 2009; D-1: Photographs copied from the surveillance video at the bank made during the robbery (the "Surveillance Video") on June 5, 2009; D-2: City of Easton Chain of Custody Report; D-3: Report of Patrolman Jones dated June 5, 2009; D-6: Evidence Log; and D-19: The Surveillance Video. "G" refers to the Government's Exhibits and "D" refers to Defendant's Exhibits.

## II. BACKGROUND

On June 5, 2009, a lone African-American gunman robbed the Lafayette Ambassador Bank in Easton, Pennsylvania. (Doc. No. 57 at 8.) Following an investigation, Detective Joseph Alonzo and other officers of the Easton Police Department prepared a Police Criminal Complaint (the "State Criminal Complaint"), which was supported by an Affidavit of Probable Cause sworn to by Detective Alonzo (the "Alonzo Affidavit"). The Alonzo Affidavit is attached hereto as Appendix A. (Id.) The State Criminal Complaint charged Defendant Markeith John Webb under Pennsylvania state law with robbery in violation of 18 Pa. C. S. § 3701(a)(1)(ii) and with aggravated assault in violation 18 Pa. C. S. § 2702(a)(1). (Id.) The Alonzo Affidavit contained the sworn statement of Detective Alonzo detailing what was discovered during the investigation of the robbery in order to show probable cause that Defendant committed this crime. (See generally Doc. No. 57, Exhibit ("Ex.") A at 21-23.) A Pennsylvania District Justice reviewed the affidavit and issued an arrest warrant. Defendant was arrested on or about June 15, 2009. (Id.)

On or about December 1, 2009, the state charges against Defendant were withdrawn and Defendant was indicted by a federal grand jury on the charge of armed bank robbery in violation of 18 U.S.C. § 2113(d). (Doc. No. 57 ¶ 9; Doc. No. 7.) On November 16, 2010, the grand jury returned a Superceding Indictment, which contains the bank robbery offense and a new Count charging Defendant with a violation of 18 U.S.C. § 924(c)(1). (Doc. No. 59.)

On September 1, 2010, without knowledge of his counsel, Defendant filed *pro se* a Motion Requesting A Franks hearing (Doc. No. 48). Defendant averred that, although the state charges were withdrawn, the Alonzo Affidavit contained false statements and this Affidavit formed the basis of testimony given to the federal grand jury by F.B.I. Agent Thomas Neeson.

2

Agent Neeson's testimony led to the issuance of the Indictment and Superceding Indictment.[2]

On September 27, 2010, on behalf of Defendant, counsel filed the Restated Motion Requesting A Franks Hearing (the "Franks Motion"). On October 1, 2010, the Government filed a response in opposition. (Doc. No. 58.) As noted above, the Court heard oral argument on the Franks Motion at the hearing held on November 18, 2010.

### III. LEGAL STANDARD

A defendant is entitled to challenge the validity of a warrant where a defendant makes a "substantial preliminary showing" that (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and (2) the allegedly false statement is necessary for the finding of probable cause. See Franks v. Delaware 438 U.S. 154, 155-56 (1978). This standard applies to both search warrants and arrest warrants. See United States v. Carter, 756 F.2d 310, 313 (3d Cir. 1985). To determine when a "substantial preliminary showing" has been made, "the law requires some basic quantum of evidence to support a defendant's allegations about the falsity of an affidavit." United States v. Christopher, No. 08-23, 2009 WL 903764 at *4 (D. Virgin Islands Mar. 31, 2009). If the Court makes a finding in favor of a defendant then the Fourth Amendment requires that a hearing be held at the defendant's request. Franks, 438 U.S. at 156.

A Franks hearing may also be required upon a "substantial showing that the affiant

---

[2] In light of this *pro se* filing, Defendant's counsel filed a Motion to Withdraw as Defendant's Attorney. (Doc. No. 50.) On September 10, 2010, this Court held a hearing on defense counsel's Motion to Withdraw. At that hearing, Defendant indicated that he was satisfied with counsel's representation and wished to continue working with him. The Court took the Motion to Withdraw under advisement and requested that counsel confer with his client and assist in filing an Amended Franks Motion. Counsel did so and the Court ultimately denied the Motion to Withdraw on November 19, 2010 (Doc. No. 66).

3

intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." United States v. Whitworth, 856 F.2d 1268, 1280 (9th Cir. 1988) (quoting United States v. Stanert, 762 F.2d 775, 781 (9th Cir.1985); see United States v. Yusuf, 461 F.3d 374, 383 (3rd Cir. 2006); see also Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (holding that Franks applies to material omissions of fact made intentionally or with a reckless disregard for the accuracy of the affidavit). Omissions are made with reckless disregard if the information omitted is the kind of information that a reasonable person would expect a judge to want to know. Russo, 212 F.3d at 788. Negligent or immaterial omissions will not invalidate a warrant. Id.

With respect to a prosecutor's presentation of evidence to a federal grand jury, a prosecutor is not obliged to present every known relevant fact. For example, there is no legal obligation for a prosecutor to present to a grand jury exculpatory evidence in his possession. See United States v. Williams, 504 U.S. 36, 52 (1992) (holding that an indictment may not be dismissed because the government failed to present exculpatory evidence to the grand jury).

If a court grants a Franks hearing and at the hearing, (1) a defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and (2) with the affidavit's false material set to one side, the remaining content is insufficient to establish probable cause, then the warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. Franks, 438 U.S. at 155-56.

**IV.    DISCUSSION**

    A.    <u>No Substantial Preliminary Showing Has Been Made By Defendant</u>

After careful consideration of the arguments presented by both parties in their respective

briefs and at the hearing, and the exhibits in evidence offered at the hearing, including the Surveillance Video, the Court finds no conclusive evidence that Detective Alonzo or Agent Neeson knowingly or intentionally presented to a judicial officer or grand jury a false statement, or did so with reckless disregard for the truth. The evidence does not conclusively show that the perpetrator's mask did not drop during the robbery or that Shaprese Thomas, a teller at the bank, did not see a sufficient portion of the perpetrator's face to be able to identify Defendant as the perpetrator. Accordingly, Defendant has failed to make a substantial preliminary showing, either through inclusion or omission, that the Alonzo Affidavit or Agent Neeson's grand jury testimony contains false information.

1. *Defendant's Proffer*

To fulfill his obligation under Franks v. Delaware, supra, to make a substantial preliminary showing of the presence of false information, Defendant may make an offer of proof. Franks, 438 U.S. at 171. In that offer, Defendant may present affidavits or explain why no affidavits exist and make a proffer of pertinent evidence in support of his position. Id. At the hearing, Defendant did not present affidavits. His Franks Motion instead was based on a review of discoverable evidence provided to Defendant by the Government. (Hearing Transcript, Nov. 18, 2010 ("Hr'g Tr.") at 15:1-7.)

In the Franks Motion, Defendant asserted that three paragraphs of the Alonzo Affidavit contained information that Detective Alonzo knew was false and/or omitted information that he knew was material to the District Justice's finding of probable cause to support the arrest warrant. (Doc. No. 57 ¶¶ 11-12.) The paragraphs at issue as listed in the Franks Motion are as follows:

a. <u>Paragraph 3</u> – fails to state that the suspect wore a mask during the time of the robbery;

b. <u>Paragraph 8</u> –

    1. Describes the interior of the vehicle linked to the defendant as tan when it is dark green. Because the interior color was dark green, defendant contends the averment in this paragraph that Inspector Matthew Gerould ("Gerould") of the EPD ["Easton Police Department"] was able to look through the window of the vehicle at 6:45 a.m. and observe red stains on the seat of the vehicle is not true. Defendant contends that at time [sic] of day referenced in this paragraph it would not have been possible for Gerould to observe red stains on a dark green seat cover.

    2. Defendant denies admitting that he drove the vehicle on the south side of Easton at or around the time of robbery of the Bank. Rather, defendant avers he told Gerould that on the morning of the robbery he drove his girlfriend to her work location in Nazereth, Pennsylvania.

    3. Defendant denies telling officers of the EPD that he believed the red stained money linked to him was possibly stolen or that defendant knew the money was stolen.

c. <u>Paragraph 9</u> – avers that on or about June 8, 2009, Shaprese Thomas ("Thomas") identified the defendant's picture in a photo array. Defendant asserts that the objective evidence known to the EPD at the time of the alleged identification established that at no time during the robbery did Thomas ever view the face of the suspect and had no factual basis upon which to make the identification.

(Doc. No. 57 ¶ 12.) At the hearing, counsel for Defendant stated that he did not intend to move on the assertions in the <u>Franks</u> Motion regarding Paragraph 8. (Hr'g Tr. at 22:15-19.) Instead, Defendant's proffer would focus on the alleged falsity in Paragraphs 3 and 9. (Hr'g Tr. at 29:3-23.) Defendant asserted that there was objective evidence that (1) bank teller Shaprese Thomas could not have identified Defendant as the perpetrator because he was wearing a mask, (2) Thomas' statement to police that the perpetrator's mask momentarily fell when he jumped over

6

the cashier's counter revealing his face was false,[3] and (3) Detective Alonzo knew, after his review of the Surveillance Video, that the perpetrator's mask never slipped down and that Thomas was not telling the truth. (Hr'g Tr. at 30-59.) Therefore, Defendant contends that by failing to include in the Alonzo Affidavit the fact that the perpetrator was wearing a mask when he gave a description of the perpetrator in Paragraph 3, and by including the fact that Thomas identified Defendant as the perpetrator in Paragraph 9, Detective Alonzo intentionally–or at least recklessly– created a false affidavit. In support of this assertion, Defendant presented photographs derived from the Surveillance Video to show that visual evidence proved that the perpetrator's mask never slipped down. Defendant also sought to prove through the photographs that Thomas' back was turned to the perpetrator when he jumped over the cashier's counter–the precise moment when Thomas claimed to have seen the mask slip down.

Further, Defendant argued that the false information in Paragraphs 3 and 9 was material and critical to establishing probable cause that Defendant committed the state charge of armed robbery. Without the identification, the Alonzo Affidavit established probable cause that Defendant was in possession of stolen property and nothing more. (Hr'g Tr. at 26:5-15; 29:3-5.)

    2.    *The Alleged Inclusion of False Information in the Alonzo Affidavit*

The Surveillance Video does not prove conclusively that the perpetrator's mask did not slip and that Thomas did not see his face. First, the surveillance video does not run continuously. There is a time lapse of seconds between screens during which events are taking place that are

---

[3] Both Thomas and another witness, Joseph Lombardo, gave statements to Easton police officers about the perpetrator's mask momentarily slipping from his face. Thomas provided this information when interviewed on June 5, 2009, following the robbery. See G-1 and Ex. A attached to Government's Opposition to Defendant's Restated Motion Requesting A Franks Hearing (Doc. No. 58).

not captured on video. The entire robbery took approximately thirty (30) seconds from start to finish. During that time, the perpetrator's mask may have dropped and been put back in place in only a second or seconds, and that moment may not have been captured on video. In fact, two eyewitnesses testified that the mask dropped and the perpetrator's face was revealed momentarily. (See Doc. No. 58 Ex. A; G-1.)

Second, Thomas' face is not captured on video at the critical time. It is impossible to determine exactly what Thomas did and did not observe. During the time when the perpetrator's mask is alleged to have slipped down, Thomas' head and face are not visible on the Surveillance Video. During an approximate nine (9) second interval from 10:56:52, when the perpetrator begins to jump over the counter into the cashier's area, to 10:57:01, when the perpetrator presumably lands behind the counter,[4] the photographs and the Surveillance Video show only the back of Thomas' body and at times her shoulders but not her head. There is no conclusive proof that the perpetrator's mask did not fall during this interval and that Thomas did not turn her head and see the perpetrator's face.[5] Accordingly, the evidence proffered does not warrant a finding that Thomas and Detective Alonzo fabricated facts, either purposefully or recklessly. Rather, the observations of Thomas under the circumstances and her credibility as a witness is for the jury to

---

[4] The Surveillance Video does not capture an image of the perpetrator landing behind the counter. The timing must be assumed based on the expressions and actions of the witnesses who are visible in the Surveillance Video.

[5] It is not clear from the Alonzo Affidavit or any other evidence in the record that Thomas identified Defendant as the perpetrator solely based on her view of his face when the mask dropped. The mask only covered a portion of the perpetrator's face. The upper portion of his face was exposed. The Surveillance Video shows that Thomas was in close proximity to the perpetrator and that she looked directly at his face when he was wearing the mask. (Surveillance Video at 10:57:02–10:57:19.)

8

resolve at trial.

### 3. *The Alleged Omission of Information from the Alonzo Affidavit*

Paragraph 3 of the Alonzo Affidavit states that "Officers reviewed the Surveillance Video and learned the suspect was a black male wearing a white t-shirt, a dark colored long sleeve shirt underneath the white t-shirt, gray sweat pants, a blue and orange baseball hat, and did display a black handgun." (Doc. No. 57 Ex. A ¶ 3.) Defendant argues that this paragraph is false because Detective Alonzo knew the perpetrator was wearing a mask and this information was omitted from the Alonzo Affidavit. In addition, paragraph 9 states that "officers made contact with Shaprese Thomas and showed her the photo array containing [Defendant]. Thomas looked over the array and identified [Defendant] as the male who entered the bank, displayed a handgun, threatened to shoot the employees, and robbed the bank of money." (Doc. No. 57 Ex. A ¶ 9.) Again, Defendant avers that Detective Alonzo was obliged to include in both paragraphs 3 and 9 the fact that the perpetrator was wearing a mask in order to make the statement more complete and not misleading.

As stated <u>supra</u>, there is evidence from two eye-witnesses that the perpetrator's mask slipped down. Based on this fact and Thomas' close proximity to the perpetrator during the robbery, there was no reason for Detective Alonzo to question Thomas' identification. His failure to include the information about the mask in the Alonzo Affidavit was not misleading. Therefore, there is no evidence that Detective Alonzo intentionally omitted from his Affidavit factual information that he knew was material to a finding of probable cause.

For the same reasons, Defendant has failed to make a substantial preliminary showing that Detective Alonzo recklessly omitted information from the Alonzo Affidavit. To do so,

9

Defendant must show that the information omitted is the kind of information that a reasonable person would expect a judge to want to know. Russo, 212 F.3d at 788. Moreover, to be actionable, the omission must be material, that is, highly relevant to probable cause. Wilson, No. 00-87, 2000 WL 877041. The fact that the perpetrator was wearing a mask covering part of his face in the context of the facts of this case is not the type of material information that Detective Alonzo would expect the District Justice would want to know. Two eye-witnesses stated that the perpetrator's mask slipped down and witness Thomas, who was shown a photo array, positively identified Defendant as the perpetrator. Moreover, the Surveillance Video makes it apparent that the mask only covers a portion of the perpetrator's face. It would be reasonable for Detective Alonzo to presume that the witness saw sufficient facial characteristics to support her identification. Further, the Surveillance Video shows that Thomas viewed the perpetrator at close range. Accordingly, Detective Alonzo included relevant information to support a finding of probable cause and was not obliged to recount "the entire history of events leading up to a warrant application with every potentially evocative detail." Id. at 787. Again, the credibility of Thomas is to be determined by the jury at trial.

      B.     <u>Alleged Prejudice To Defendant Before The Federal Grand Jury</u>

Defendant also has the burden to show that his contentions about the falsity of the Alonzo Affidavit tainted the presentation to the federal grand jury. Defendant contends that the testimony of Agent Neeson, which was presented to the federal grand jury and resulted in the return of the Indictment and Superceding Indictment against Defendant, tracked very closely the content of the Alonzo Affidavit. Defendant contends that Agent Neeson did not perform a significant independent investigation and relied upon Detective Alonzo's false affidavit in his

testimony before the grand jury. (Hr'g Tr. at 13:24–14:9; Doc. No. 57 at 6.)

The evidence shows that Agent Neeson conducted an independent investigation and did not merely rely upon the assertions in the Alonzo Affidavit. Defendant concedes that Agent Neeson interviewed Defendant, the bank manager and at least one other witness on his own or in conjunction with the Easton Police Department. (Hr'g Tr. at 14:3-17.) Further, Agent Neeson's testimony to the grand jury contains information that was not included in the Alonzo Affidavit. Notably, in recounting Thomas' description of the perpetrator, Agent Neeson informed the grand jury that "Thomas described [the perpetrator] as a heavy set black male, 180 to 210 pounds, 31 to 36 years old, wearing a scarf like piece of cloth over part of his face, a blue [and] orange baseball cap, white T-shirt, and gray sweat pants, and black sneakers." (Doc. No. 57 Ex. B at 4:21–5:1.) Even with the inclusion of the information about the cloth covering part of the perpetrator's face, the grand jury found sufficient probable cause to indict Defendant.[6]

The Court has reviewed Agent Neeson's grand jury testimony. Although Agent Neeson was under no obligation to provide the grand jury with every detail of the investigation, he did provide sufficient evidence to prove to the grand jury that Defendant was the perpetrator of the bank robbery. He was not obliged to inform the grand jury that Defendant was wearing a mask or to provide any exculpatory evidence at all. See United States v. Williams, 504 U.S. 36, 52 (1992). There is no conclusive evidence that the grand jury was improperly affected by the Alonzo Affidavit.

---

[6] The grand jury return of an indictment knowing that the perpetrator was wearing a mask reinforces the fact that omitting from the Alonzo Affidavit the information about the mask would not be material to the Pennsylvania District Justice's finding of probable cause.

## V.    CONCLUSION

Defendant has failed to make a substantial preliminary showing that the Alonzo Affidavit contained a false statement made knowingly and intentionally, or made with reckless disregard for the truth.  Neither the omission of the fact that the perpetrator wore a mask, nor the position of Thomas in relation to the perpetrator, undermine the finding of probable cause in the Alonzo Affidavit.  Defendant has merely raised an issue of credibility to be decided by the jury at trial.  Consequently, no further Franks hearing is required and Defendant's Restated Motion Requesting A Franks Hearing will be denied.  An appropriate Order follows.