IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MARKEITH WEBB, <br><br> Defendant. | CRIMINAL ACTION <br> NO. 09-755 |

**OPINION**

**Slomsky, J.**                                                                                                          **July 2, 2021**

## I.     INTRODUCTION

Pro se Defendant Markeith Webb, who is serving a 199-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No. 172.)  In his Motion, Defendant requests either a reduction of his sentence to time served or that he be permitted to serve the remainder of his sentence in home confinement.  He argues that the Court should grant his Motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions amount to extraordinary and compelling circumstances justifying his release.  Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he is not a danger to the community, he has been rehabilitated, and he only has two years remaining on his sentence.

The Government opposes Defendant's Motion, citing Defendant's vaccination against COVID-19, the danger Defendant presents to the community, the seriousness of his underlying offenses, his lengthy criminal history, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.

For reasons that follow, Defendant's Motion (Doc. No. 172) will be denied.

1

## II. BACKGROUND

### A. Defendant's Criminal History

Defendant is presently incarcerated at the Federal Correctional Institution ("FCI") Schuylkill for robbing at gunpoint the Lafayette Ambassador Bank ("Lafayette Bank") in Easton, Pennsylvania. (See Doc. No. 177 at 1.) On June 5, 2009, Defendant entered Lafayette Bank wearing a mask and gloves and carrying a handgun. (See id. at 1.) He "jumped over into the teller area," causing his mask to fall down and exposing his face, at which point two of the tellers recognized Defendant as the grandson of an elderly bank customer. (Id.) Defendant pointed his handgun at the tellers and a customer and stole approximately $4,665 from Lafayette Bank. (See id.) "Included in the stolen money were two dye-pack security devices, manufactured to release red dye and tear gas when removed a certain distance from the bank." (Id. at 1-2.) "As [Defendant] fled . . . on foot, tellers saw a dye-pack detonate on [his] person." (Id. at 2.)

A few hours after the robbery, Defendant entered a convenience store and "was recorded on . . . surveillance cameras exchanging red-stained currency for clean currency with the cashier." (Id.) "Police investigators [also] observed significant red staining on the front seats of the car [Defendant] had driven to the convenience store." (Id.) Ten days later, on June 15, 2009, Defendant was apprehended in the parking lot of a different bank pursuant to an arrest warrant. (See id.) When he was arrested, police officers recovered from Defendant "$492 in red-stained currency." (Id.)

On November 30, 2010, Defendant proceeded to trial on charges involving the Lafayette Bank robbery, and on December 3, 2010, a jury convicted Defendant of armed bank robbery, in violation of 18 U.S.C. § 2113(d), and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). (See id. at 2; Doc. Nos. 53; 95 at 80:11-81:24; 130 at 1.) On July 7, 2011, the Court sentenced Defendant to 199 months' imprisonment followed

by 5 years' supervised release. (See Doc. Nos. 177 at 2; 130 at 2-3.) When the Government filed its Response to the compassionate release Motion, Defendant had served approximately 143 months of his sentence and had earned approximately 20 months' credit for good conduct. (See Doc. No. 177 at 2-3.) With good time credit, his anticipated release date is August 4, 2023. (See id. at 2.) While incarcerated, he has not had any disciplinary infractions, and in his Motion, Defendant notes that he has "made it [his] personal goal to learn skills" and create opportunities for himself by "maximiz[ing] [his] participation in many educational/vocational programs." (Doc. No. 172 at 5; see also Doc. No. 177 at 3.)

Aside from the offenses for which Defendant is presently incarcerated, he has four prior convictions for (1) armed robbery; (2) fleeing and eluding law enforcement; (3) terroristic threats; and (4) simple assault. (See Doc. No. 177 at 2.) He committed the instant offenses while on probation for his prior robbery conviction. (See id. at 2, 24.)

### B. Defendant's Motion to Appoint Counsel to Represent Him On His Request For Compassionate Release

On December 9, 2020, Defendant sent to the Court a pro se Letter Request for Appointment of Counsel in which he detailed several grounds for a reduction of his sentence under the compassionate release statute. (See Doc. No. 168 at 1.) The following day, the Court, construing the Letter Request as a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), denied the Motion without prejudice for lack of jurisdiction. (Doc. No. 169.)

But on January 13, 2021, the Federal Community Defender Office for this District filed on Defendant's behalf a Motion to Appoint Counsel for the purpose of pursuing compassionate release. (Doc. No. 170.) After the Court granted Defendant's Motion to Appoint the Federal Community Defender Office (Doc. No. 171), Assistant Federal Defender Katrina Young, Esquire, sent a letter to the Court dated February 26, 2021, stating that her office would not be pursuing

compassionate release for Defendant because he received the COVID-19 vaccine. (See Doc. No. 175.) Thus, the Court will evaluate the Motion as filed by Defendant pro se.

### C. Defendant's Pro Se Motion for Compassionate Release

On March 16, 2021, Defendant filed the instant pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 172.)[1] In the Motion, he asks the Court to order his "release[] to home confinement or probation for the reminder of [his] sentence" or, in the alternative, "issue a non-binding recommendation" to the BOP to this effect.[2] (Id. at 1, 6.) Defendant states that he suffers from obesity, shortness of breath, blood clots, and aftereffects of brain surgery for a ruptured aneurysm, including seizures and blackouts. (See id. at 3; Doc. No. 177 at 3.) He contends that these underlying conditions, the COVID-19 pandemic, and FCI Schuylkill's allegedly inadequate response to the pandemic place him at an increased risk of illness or death if he were to contract COVID-19. (See Doc. No. 172 at 3-4, 6.)

Despite having received both doses of the Pfizer COVID-19 vaccine, Defendant argues that the risk to his health from the virus remains because the "vaccine is not working." (Id. at 3.) He contends that as of March 10, 2021, at least 12 inmates tested positive for COVID-19 after

---

[1] On March 22, 2021, Defendant submitted to the Court a letter restating several arguments raised in his Motion and providing additional details regarding the conditions at FCI Schuylkill. (See Doc. No. 173 at 1.) For purposes of this Opinion, the Court will refer to Defendant's pro se Motion for Compassionate Release (Doc. No. 172) and his accompanying letter filed on March 22, 2021 (Doc. No. 173) collectively as "the Motion."

[2] In support of his requests, Defendant cites 18 U.S.C. §§ 3621, 3624(c)(2), the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), and the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (2008). (See Doc. No. 172 at 1, 6.) While a court usually does not have the authority to order the remainder of a defendant's sentence be served on home confinement, it may grant compassionate release and order that, as a condition of supervised release, a defendant spend a period of time on home confinement. See United States v. Snell, No. 17-602, 2020 WL 4053823, at *2 (D. Md. July 20, 2020). However, for the reasons discussed infra, a reduction or modification of Defendant's sentence is not warranted at this time.

receiving the second dose of the vaccine and that this number is increasing. (See id. at 6.) Defendant, however, tested negative for the virus after receiving his second dose on March 2, 2021. (See id. at 3; Doc. No. 177 at 3.) Further, he claims that FCI Schuylkill is mishandling its response to the pandemic by permitting inmates who test positive, whether vaccinated or not, to move throughout the prison 10 days after receiving a positive result, while requiring those who test negative to remain in their cells on lockdown. (See Doc. Nos. 172 at 3-4; 173 at 1.) Because Defendant tested negative, he states that he cannot leave his cell, work, use the phones or other amenities, or make purchases from the commissary and therefore is experiencing "cruel and unusual punishment." (Doc. No. 172 at 4.) These reasons, Defendant contends, provide an extraordinary and compelling basis for a reduction or modification of his sentence. (See id. at 2-4.)

Regarding the § 3553(a) sentencing factors, Defendant avers that his conduct while incarcerated demonstrates that he is not a danger to the community because he has no disciplinary infractions, has been rehabilitated, and only has two years remaining on his sentence. (See id. at 4-5.) He states that being in prison for the past 12 years has been a "blessing" because it "opened [his] eyes to reality" and enabled him to "learn skills" and "maximize[] [his] participation in many educational/vocational programs" in order to "open up as many locked doors as possible." (Id. at 5.) Defendant apologizes for his crimes and avers that he has changed for the better and, once released, is "never coming back." (Id.) He also notes that, if released, he will live with his mother and "ha[s] several potential job interviews" lined up. (Id.; see also id. at 4.)

D. **Government's Response in Opposition to Defendant's Motion**

On April 22, 2021, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 177.) In its Response, the Government argues that Defendant's Motion should be denied because he is fully vaccinated against COVID-19 and therefore no longer presents an extraordinary

5

and compelling reason for release.  (See id. at 1.)  Moreover, the Government submits that the § 3553(a) factors weigh against Defendant's release, given the danger he presents to the community, the seriousness of his crimes, and his lengthy criminal history.  (See id. at 23-24.)

Regarding Defendant's medical conditions, the Government attached his sealed medical records to its Response which largely confirm the medical conditions he alleges.  (See id. at 3.)[3]  The Government concedes that Defendant's obesity is a risk factor identified by the Centers for Disease Control and Prevention ("CDC") as increasing the risk of an adverse outcome from COVID-19.  (See id. at 13.)  It notes, however, that Defendant is "fully ambulatory and apparently engages in all normal activities of daily living . . . ."  (Id. at 4.)

Notably, Defendant received two doses of the Pfizer COVID-19 vaccine, the first of which was administered on February 9, 2021 and the second on March 2, 2021.  (See id. at 3; Doc. No. 172 at 3.)  The Government therefore states that Defendant's obesity does not present an extraordinary and compelling reason for release because he has been vaccinated.  (See Doc. No. 177 at 13.)  In its view, while "an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19" presents an extraordinary and compelling reason, due to Defendant's vaccination, no extraordinary and compelling reason exists in this case.  (Id. at 12; see also id. at 13-14.)

Further, the Government highlights the BOP's implementation of "extensive changes to its operations" to prevent the spread of COVID-19, including implementing social distancing, hygienic and cleaning protocols, quarantining and treating symptomatic inmates and new inmates, limiting group gatherings and inmate movement among facilities, checking staff members'

---

[3]  The records reveal inconsistencies about whether Defendant experienced seizures as an aftereffect of his brain surgery in 2009.

6

temperatures daily, requiring mandatory self-reporting of symptoms, prohibiting social visits, and administering the COVID-19 vaccine to inmates and staff members. (See id. at 4.)[4]  It also notes that the Attorney General has directed the BOP to exercise discretion in placing an inmate in home confinement during the final six months or 10 percent of a sentence, whichever is shorter, if it is warranted by the totality of the circumstances. (See id. at 5.)  The Government avers that "all of [the BOP's] strenuous efforts have been fruitful," as "the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting." (Id. at 5-6.)  While it acknowledges that "in late 20[2]0 and early 2021, there were significant outbreaks" at FCI Schuylkill, it submits that the "BOP responded with extensive testing and quarantine practices that were also successful elsewhere in mitigating similar episodes." (Id. at 6.)  As of April 2021, "there has been no COVID-related death at the facility." (Id.)

As for the § 3553(a) sentencing factors, the Government submits that "[D]efendant's risk of danger to the community" and the circumstances of his crimes "counsel strongly against relief." (Id. at 23-24.)  Defendant has been "convicted of armed robbery twice," and during both crimes,

---

[4]  In response to Defendant's contention that the COVID-19 vaccine he and other inmates received was ineffective, the Government notes that courts "have almost uniformly rejected" this argument. (Doc. No. 177 at 18.)  The Government maintains that the vaccine is effective in preventing COVID-19 infection. (See id. at 14-15.)  It avers that Defendant "received a vaccine approved by the [Federal Drug Administration ("FDA")] for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease." (Id. at 14.)  "[T]he prevailing view is that absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." (Id. at 18) (citation and quotations omitted).  Thus, it argues, "[a]t this time, the Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus." (Id. at 20.)

7

he used a gun to menace his victims. (Id. at 23.) Additionally, he "has a lengthy [criminal] record . . ., and he robbed the Lafayette . . . Bank . . . while he was on probation for his prior robbery [conviction]." (Id. at 24.) Therefore, the Government argues, Defendant "should be required to serve the sentence that this Court imposed for his criminal conduct" and "release at this point is inappropriate . . . ." (Id. at 23-24.)

### III. DISCUSSION

#### A. Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[5] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

---

[5] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Harris, 973 F.3d 170, 171 (3d Cir. 2020) (holding prisoner need not fully exhaust administrative rights if thirty days pass from warden's receipt of compassionate release request). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. In January 2021, Defendant sent a request for compassionate release to the Warden at FCI Schuylkill, and on January 15, 2021, the Warden denied his request. (See Doc. Nos. 172 at 2; 177 at 3.) On March 16, 2021, Defendant filed the instant Motion for Compassionate Release. (See Doc. No. 172.) Because at least thirty days have elapsed from the date the Warden received

8

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>>
>> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the

---

Defendant's request and denied it to the date Defendant filed the instant Motion, he has met the exhaustion requirement.

circumstances set forth below:

> (A) Medical Condition of the Defendant
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or mental condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant
>
>> (i) is at least 65 years old;
>>
>> (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>>
>> (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family circumstances.
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[6]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner

---

[6] Although by its express language § 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance").

11

is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

   . . . [and]

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling

reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

B. **Defendant's Motion for Compassionate Release Will Be Denied**

Defendant's Motion will be denied. Even if Defendant's obesity is an extraordinary and compelling reason for his release, COVID-19 is no longer present to a significant degree at FCI Schuylkill. Further, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[7] Each of these conclusions is discussed seriatim.

1. **Defendant's Obesity May Present an Extraordinary and Compelling Reason for His Release**

Defendant contends that he has shown an extraordinary and compelling reason for his release because he suffers from "obesity, shortness of breath, blackouts, seizures . . . and blood clots," and because there is a risk of exposure to COVID-19 at FCI Schuylkill. (Doc. No. 172 at 3; see also id. at 4, 6.) Thus, according to Defendant, he faces a high risk of serious illness or death if infected with COVID-19. (See id. at 4.)

In its Response, the Government concedes that Defendant's obesity only is identified by the CDC as a COVID-19 risk factor, but it submits that "he no longer presents 'an extraordinary and compelling reason' [for release] because he has been vaccinated." (Doc. No. 177 at 13.) Because Defendant is relatively young at 45 years of age, is "fully ambulatory and . . . engages in all normal activities of daily living," and "received a vaccine approved by the FDA for emergency use based on the conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection," it is evident that Defendant "has provided effective 'self-care' against the

---

[7] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

virus, and does not present" a sufficient justification for his release. (Id. at 4, 14-15; see also id. at 3.)[8]

For purposes of this Motion, the Court will assume, without deciding, that Defendant's obesity presents an extraordinary and compelling reason for his compassionate release in light of the COVID-19 pandemic.[9] Because the Government concedes that Defendant's obesity presents a COVID-19 risk factor, and the Court will consider this as an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold. However, the Court notes that other courts have rejected claims of extraordinary and compelling reasons for release based on obesity, seizure disorders (epilepsy), and conditions

---

[8] Despite Defendant's assertion in his Motion that FCI Schuylkill is currently experiencing an outbreak of COVID-19, no actual, non-speculative risk of contracting COVID-19 at FCI Schuylkill presently exists. (See Doc. Nos. 172 at 3-4; 173 at 1.) The Government concedes that FCI Schuylkill experienced "significant outbreaks" in "late 20[2]0 and early 2021." (Doc. No. 177 at 6.) However, in the Government's Response in Opposition filed on April 22, 2021, it notes that "[a]t present, there are only 3 inmates who are positive" for COVID-19 in the institution out of a total of 1,051 current inmates, 247 of which previously "were positive and have recovered." (Id.) As of the filing of this Opinion, there are no inmates at FCI Schuylkill who currently have COVID-19. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (July 2, 2021), https://www.bop.gov/coronavirus/. These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ." Id. (emphasis omitted). Given this information, COVID-19 is no longer present to a significant degree at FCI Schuylkill. For this reason, and because the § 3553(a) sentencing factors weigh against a reduction or modification of Defendant's sentence, his Motion will be denied. See United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence and because he has not demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Fort Dix.").

[9] The CDC notes that a Body Mass Index ("BMI") of 30 kg/m² or greater constitutes obesity and is a COVID-19 risk factor. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant is 69 inches tall, and on September 3, 2020 he weighed 205 pounds. (See Doc. No. 177 at 4 n.1.) Based on his height and September 2020 weight, Defendant's BMI is 30.3 kg/m², which is above the CDC's obesity threshold. (See id.)

involving shortness of breath, such as asthma, particularly where a defendant is relatively young. See, e.g., United States v. Williams, No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 kg/m$^2$ and moderate asthma do not meet extraordinary and compelling reasons for release); United States v. Whiteman, No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release, especially "[g]iven Whiteman's relative youth (he is forty-two) and his lack of other risk factors"); United States v. Wragg, No. 15-398, 2020 WL 4015204, at *8 (E.D. Pa. July 16, 2020) (finding mild obesity and epilepsy fall short of extraordinary and compelling reasons for release); United States v. Gordon, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) ("Even considering the outbreak of COVID-19, being mildly obese [with a BMI of 31.8 kg/m$^2$], when 42.4% of American adults are obese and additional 32% are overweight," does not amount to extraordinary and compelling reasons for release); United States v. Towel, No. 17-519-6, 2020 WL 2992528, at *4-5 (E.D. Pa. June 4, 2020) (determining mild, exercise-induced asthma not a COVID-19 risk factor); United States v. Numann, No. 16-cr-00065, 2020 WL 1977117, at *3 (D. Alaska Apr. 24, 2020) (footnote omitted) (denying motion for compassionate release because "[t]here is no evidence that epilepsy . . . make[s] a person more susceptible to COVID-19").

Moreover, Defendant has already received both doses of the Pfizer COVID-19 vaccine and courts in this District have denied compassionate release, in part, because the defendant had been—or would soon be—vaccinated against COVID-19. See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021)

15

("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the Bureau provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot. Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law. He presents minor health concerns and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC Lewisburg.").[10]

### 2. Section 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's obesity presents an extraordinary and compelling reason for his release, the relevant § 3553(a) factors do not support either Defendant's compassionate release to home confinement or a sentence reduction. As a threshold matter, other courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief. See, e.g., United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health

---

[10] Defendant is 45 years old. (See Doc. No. 177 at 3.) He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children. See § 1B1.13 n.1(A)-(C). Thus, the factors listed in this section of the Sentencing Guideline Manual are not relevant here. See id.

conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic."); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence . . . ."); United States v. Daniels, No. 15-127, 2020 WL 4674125, at *2-4 (E.D. Pa. Aug. 12, 2020) (denying compassionate release despite Government's concession that defendant's obesity was an extraordinary and compelling reason for release because, inter alia, the risk of exposure to COVID-19 at defendant's prison was merely speculative and he continued to be a danger to the community); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here. . . . [T]he [c]ourt [must] consider the 'factors set forth in section 3553(a) to the extent they are applicable' before [it] may reduce [defendant's] sentence. These factors . . . . support the need for [defendant] to serve the sentence imposed.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant sentencing factors counsel against Defendant's release at this time. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See § 3553(a)(1). Defendant is presently incarcerated for the armed robbery of Lafayette Bank, which he committed while on probation for a prior armed robbery conviction. (See Doc. No. 177 at 2, 24.) During the Lafayette Bank robbery, Defendant entered the bank wearing a mask and gloves, jumped into the teller area, and pointed a gun at several victims. (See id. at 1.) In 2005, he and another individual committed a carjacking during which Defendant pointed a gun at his victim and ordered him out of his car. (See id. at 2, 23.) Defendant also has three prior convictions for fleeing and eluding law enforcement, making terroristic threats, and simple assault. (See id. at 2.) Given

all this background, there is no assurance that Defendant would abstain from dangerous criminal activity if he were released.

The Court also has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served just over eighty percent of his total term of imprisonment. (See Doc. No. 177 at 2-3.) While the Court acknowledges Defendant's rehabilitation efforts and positive disciplinary record while incarcerated, the magnitude of his crimes warrant the sentence he received.[11] (See Doc. No. 172 at 4-5.) Although Defendant expresses remorse and accepts responsibility for his actions, a reduction or modification of his sentence at this point would not serve any of the above factors. (See id. at 5.)

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Before sentencing, the applicable guideline range prescribed a sentence of 161 to 180 months' imprisonment. At sentencing, however, the Government moved for an additional two-level increase in Defendant's offense level for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines based on his efforts to intimidate one of the victimized bank tellers prior to

---

[11] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

18

her testimony at trial. (See Doc. Nos. 126 at 4-7; 135 at 9-31.)[12] After the Court heard argument on the Motion, it found that the Government demonstrated that Defendant "willfully . . . attempted to obstruct or impede[] the administration of justice with respect to the investigation[ or] prosecution . . . of the instant offense of conviction[] and . . . the obstructive conduct related to . . . [Defendant's] offense of conviction . . . ." U.S.S.G. § 3C1.1. Thus, the Court determined that a two-level upward adjustment to Defendant's offense level was warranted, resulting in an applicable guideline range of 176 to 199 months' imprisonment. (See Doc. No. 135 at 31:14-37:13.)

The combination of Defendant's extensive criminal history and the seriousness of his offenses resulted in his 199-month sentence. (See Doc. No. 177 at 2.) This is a sentence within the range determined by the Court under the Sentencing Guidelines, which Congress created to address sentencing disparities. A reduction in Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

For all of these reasons, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction.

---

[12] Section 3C1.1 of the Sentencing Guidelines provides for a two-level increase in a defendant's offense level:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. Application Note 4 to § 3C1.1 supplies "a non-exhaustive list of examples of the types of conduct to which this adjustment applies," one of which is "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so . . . ." § 3C1.1 n.4(A).

## IV.	CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 172) will be denied.  An appropriate Order follows.