IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA<br><br>v.<br><br>MARKIETH WEBB,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 09-755 |
|---|---|

**OPINION**

**Slomsky, J.** **January 24, 2022**

## I. INTRODUCTION

Before the Court is pro se Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 180). The Government has filed a Response in Opposition to Defendant's Motion (Doc. No. 181) and the Motion is now ripe for disposition. For the reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 180) will be denied.

## II. BACKGROUND

On December 3, 2010, Defendant Markeith Webb was convicted of armed robbery and using and carrying a firearm during and in relation to a crime of violence stemming from his robbery of Lafayette Ambassador Bank on June 5, 2009. (See Doc. No 178 at 2.) He was sentenced to 199 months' imprisonment to be followed by five years' supervised release. (See id. at 2–3.)

On March 16, 2021, Defendant filed his first pro se Motion for Compassionate Release ("First Motion") (Doc. No. 172). He cited the COVID-19 pandemic and his increased risk of serious illness or death from the virus as reasons for the Court to allow him to complete the remainder of his sentence in "home confinement or [on] probation." (Id. at 1.) Specifically, Defendant noted "that he suffer[ed] from obesity, shortness of breath, blood clots and aftereffects

of brain surgery for a ruptured aneurysm, including seizures and blackouts." (Doc. No. 178 at 4; see also Doc. No. 172 at 3; Doc. No. 177 at 3.) He also claimed that the Federal Correctional Institute ("FCI") at Schuylkill, Pennsylvania, where he is incarcerated, inadequately responded to the pandemic, further increasing his risk for serious death or illness. (See Doc. No. 172 at 3–4, 6.)

The Government opposed Defendant's First Motion, arguing that Defendant's concerns regarding his health risk factors were alleviated because he was fully vaccinated against COVID-19 and that the danger he presents to the community, the seriousness of his crimes, and his lengthy criminal history weighed against granting him release. (See Doc. No. 177 at 1, 23–24.)

On July 2, 2021, the Court denied Defendant's First Motion for Compassionate Release. (See Doc. No. 178.) The Court noted that, even if Defendant's obesity may have presented an "extraordinary and compelling reason for his compassionate release," "other courts have rejected claims of extraordinary and compelling reasons for release based solely on obesity, seizure disorders (epilepsy), and conditions involving shortness of breath, such as asthma, particularly where a defendant is relatively young." (Id. at 14–15 (citing United States v. Williams, No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 kg/m2 and moderate asthma do not meet extraordinary and compelling reasons for release); United States v. Whiteman, No. 15-00298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release, especially "[g]iven Whiteman's relative youth (he is forty-two) and his lack of other risk factors"); United States v. Wragg, No. 15-398, 2020 WL 4015204, at *8 (E.D. Pa. July 16, 2020) (finding mild obesity and epilepsy fall short of extraordinary and compelling reasons for release); United States v. Gordon, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) ("Even considering the outbreak of COVID-19, being mildly obese [with a BMI of 31.8 kg/m2], when 42.4% of

American adults are obese and additional 32% are overweight," does not amount to extraordinary and compelling reasons for release); United States v. Towel, No. 17-519-6, 2020 WL 2992528, at *4-5 (E.D. Pa. June 4, 2020) (determining mild, exercise-induced asthma not a COVID-19 risk factor); United States v. Numann, No. 16-cr-00065, 2020 WL 1977117, at *3 (D. Alaska Apr. 24, 2020) (footnote omitted) (denying motion for compassionate release because "[t]here is no evidence that epilepsy . . . make[s] a person more susceptible to COVID-19")).)

Further, the Court noted that the fact that Defendant was fully vaccinated outweighed the arguments he advanced in favor of his release. (See Doc. No. 178 at 15–16.) The Court cited numerous decisions from this District denying compassionate release where the defendant was fully vaccinated. (See id. at 15–16 (citing United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Roper, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("[T]he [BOP] medical staff is actively treating and successfully managing Mr. Roper's conditions, and, perhaps most importantly, the Bureau provided the first of two vaccination shots several weeks ago and no one suggests delay in the second shot. Mr. Roper does not present an extraordinary and compelling reason for his release."); United States v. Ulmer, No. 18-00579-3, 2021 WL 844579, at *3 (E.D. Pa. Mar. 5, 2021) ("Ulmer's request for compassionate release has no merit in fact or law. He presents minor health concerns

and his recovery from COVID-19 and vaccination significantly outweigh any issues at FPC Lewisburg.”)).)

Additionally, the Court rejected Defendant’s claim that FCI Schuylkill mishandled its response to the pandemic. (See Doc. No. 178 at 14 n.8.) The Court noted that, at the time it issued its Opinion, “COVID-19 [was] no longer present to a significant degree at FCI Schuylkill.” (Id.)

Finally, the Court concluded that the 18 U.S.C. § 3553(a) sentencing factors did not weigh in favor of granting Defendant’s request to be released. (See id. at 16–19.) Specifically, the Court noted that “Defendant’s extensive criminal history and the seriousness of his offenses resulted in his 199-month sentence” and reducing his “sentence would frustrate the Sentencing Commission’s goal of avoiding unwarranted sentencing disparities among similarly situated defendants ensuring consistent punishment for similar offenses.” (Id. at 19.)

On September 20, 2021, approximately two-and-a-half months after the Court denied his First Motion, Defendant filed his Second Motion for Compassionate Release (“Second Motion”) (Doc. No. 180), which is presently before the Court. The Government again opposes Defendant’s Second Motion and filed a Response on September 29, 2021 (Doc. No. 181). For the reasons that follow, the Court will deny Defendant’s Second Motion for Compassionate Release.

## III. DISCUSSION

### A. Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court “may not modify a term of imprisonment once it has been imposed . . . .” 18 U.S.C. § 3582(c). There are, however, “a few narrow exceptions” to this general “rule of finality[,]” Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant’s

motion after the defendant has exhausted his administrative remedies.[1]  See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States

---

[1] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant met the exhaustion requirement before filing his First Motion.  (See Doc. No. 178 at 8 n.5.)  However, it is unclear from the record whether Defendant has also met the exhaustion requirement regarding his Second Motion.  In his Second Motion, Defendant claims that he "has exhausted his administrative remedies prior to moving for relief by this Court" and that he was "denied on [January 15, 2020]." (Doc. No. 180 at 6.)  Defendant is likely referring to when the Warden at FCI Schuylkill denied his request for compassionate release on January 15, 2021, which led to his First Motion before this Court.  (See id.)  There is nothing more to indicate that Defendant exhausted his remedies again before bringing this Second Motion.  However, the Court will not belabor this point since the Government did not raise it in its Response, (see Doc. No. 181), and Defendant has already exhausted his administrative remedy with respect to compassionate release claims.

Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

**B. Defendant's Second Motion for Compassionate Release Will Be Denied**

In his Second Motion, Defendant: (1) appears to challenge the legality of his conviction and sentence (see Doc. No. 180 at 2–5); (2) again cites his medical condition, specifically the fact that he "suffers from obesity and shortness of breath," and notes his concern over the Delta variant of COVID-19 (id. at 6–7); and (3) claims that he would "not pose a danger to the safety of any other person or community" were he to be released (id. at 7).

With regard to Defendant's challenges to the legality of his conviction and sentence, the Government correctly points out that a motion for compassionate release is not the proper mechanism by which to assert these challenges. (See id. at 6–7); see also United States v. Henderson, 858 F. App'x 466, 469 & n.2 (3d Cir. 2021) (not precedential) (a previously rejected claim of sentencing error does not qualify as an "extraordinary and compelling reason" for compassionate release, and to the extent that the defendant argues that his sentence should be vacated on this basis, such a claim can be raised only in a § 2255 motion); United States v. Rodriguez, CR 11-251-01, 2021 WL 601510, at *7 (E.D. Pa. Feb. 16, 2021) ("An argument that a sentence was improperly calculated and unlawful must be raised on a habeas motion. A defendant

cannot circumvent the habeas restrictions by labeling his habeas motion as a motion for compassionate release."); United States v. Albanese, CR 97-359, 2021 WL 2400762, *3 (E.D. Pa. June 11, 2021) ("Convictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A)."). Thus, Defendant's argument regarding his conviction and sentence are without merit.

Next, regarding Defendant's medical condition, the Government notes that Defendant's "medical condition has not changed in the six months since he filed his first motion" and that, "[i]n fact, he has not sought medical care from [the Bureau of Prisons] for any ailment during 2021." (Doc. No. 181 at 2.) Additionally, the fact still remains that Defendant is relatively young (he is forty-six) and has received at least two doses of the Pfizer vaccine. (See Doc. No. 178 at 6; see also Doc. No. 181 at 1.)

What has changed, however, since the time that Defendant filed his First Motion, and even since he filed his Second Motion, is the current state of the pandemic. When Defendant filed his Second Motion, he cited his concern over the Delta variant of COVID-19. (See Doc. No. 180 at 6.) Since Defendant filed his Second Motion, the Omicron variant has spread significantly.

In response to Defendant's concern over the Delta variant, the Government responded that "according to the [Centers for Disease Control and Prevention ("CDC")], the approved vaccines are proving highly effective against the Delta variant." (Doc. No. 181 at 2–3.) In support, the Government cites examples where courts have not changed their analyses of motions for compassionate relief due to the spread of the Delta variant. (See id. 4–5); see also United States v. Martin, CR 98-178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021) ("[W]e join the significant majority of judges reviewing the Delta variant arguments who choose to follow CDC guidance to allow consistency in prisoner treatment. As Judge Murphy reasoned, '[n]othing about

the Delta variant changes the fact that [Mr. Martin's] vaccination status renders his fear of COVID-19 a noncompelling reason to grant him release.'") (quoting United States v. Proge, 2:12-CR-20052-06, 2021 WL 3857440, at *1 (E.D. Mich. Aug. 30, 2021)); United States v. Gibbs, CR 96-539-2, 2021 WL 3929727 (E.D. Pa. Sept. 2, 2021) (denying motion for compassionate relief notwithstanding the spread of the Delta variant in part because the "defendant ha[d] been inoculated against COVID-19 with a highly effective vaccine").

The same appears to be true regarding the Omicron variant as well. See, e.g., United States v. Riddick, CR 95-73-1, 2022 WL 138074, at *4 (E.D. Pa. Jan. 14, 2022) ("Although the vaccines do not prevent all infections, they have been found to provide strong protection from severe disease, hospitalization, and death from COVID-19, including from the Delta and other variants with effectiveness ratings between 85% and 90% . . . The current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant.) (citing How and Why CDC Measures Vaccine Effectiveness, CDC https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html (Dec. 23, 2021); Omicron Variant: What You Need to Know, CDC https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (Dec. 20, 2021)); United States v. Mansfield, 2:17-CR-00205-DCN-1, 2022 WL 44987, at *2 (D.S.C. Jan. 5, 2022) ("However, current information from the [CDC] suggests that vaccines will continue to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant . . . The court does not find that the Omicron variant changes the calculus on the matter at this time.") (internal quotations and citations omitted). Thus, neither the Delta nor the Omicron variants significantly alter the Court's prior analysis in its decision denying Defendant's First Motion. (See Doc. No. 178.)

Finally, there is nothing that has transpired since the Court denied Defendant's First Motion that would change the Court's determination that the § 3553(a) sentencing factors do not weigh in favor of granting Defendant's release. (See id. at 16–19.) As the Court previously explained, the seriousness of Defendant's offense, his extensive criminal history, and the judicial consideration to avoid sentencing disparities among similarly situated criminal defendants all weigh against granting Defendant's request for a sentencing reduction. (See id.)

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 180). An appropriate Order follows.